UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------
ELAINE WANG,

        Plaintiff,

v.

ZOGENIX, INC., CAM L. GARNER, LOUIS C. BOCK, JAMES B. BREITMEYER, M.D., PH.D., STEPHEN FARR, PH.D., CAROLINE M. LOEWY, ERLE T. MAST, MARY E. STUTTS, RENEE TANNENBAUM, DENELLE J. WAYNICK, and MARK WIGGINS,

        Defendants.
------------------------------------------------------------

Case No. 1:22-cv-00900

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Zogenix, Inc. ("Zogenix or the "Company") and the members Zogenix board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Zogenix by affiliates of UCB S.A., a société anonyme formed under the laws of Belgium ("UCB").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on February 1, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Zinc Merger Sub, Inc., a wholly owned subsidiary of UCB ("Merger Sub"), will merge with and into Zogenix, with Zogenix continuing as the surviving corporation and as a wholly owned subsidiary of UCB (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated January 18, 2022 (the "Merger Agreement"), each Zogenix common share issued and outstanding will be converted into the right to receive: (i) $26.00 per share in cash, plus (ii) one non-transferable contingent value right per share of Zogenix stock ("CVR"), which CVR represents the right to receive a contingent payment of $2.00, net to the seller in cash, without interest and less any applicable tax withholding, if a specified milestone is achieved on or prior to December 31, 2023 (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of Zogenix's outstanding common stock and will expire on March 1, 2022 (the "Tender Offer").

3.      Defendants have now asked Zogenix's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Zogenix's financial projections relied upon by the Company's financial advisors, BofA Securities, Inc. ("BofA") and SVB Leerink LLC ("SVB Leerink") in their financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the financial advisors. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d),

and 20(a) of the Exchange Act as Zogenix stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Zogenix's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the NASDAQ Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Zogenix common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Cam L. Garner has served as a member of the Board since August 2006, and is the Chairman of the Board and one of the co-founders of the Company.

11. Individual Defendant Louis C. Bock has served as a member of the Board since August 2006.

12. Individual Defendant James B. Breitmeyer, M.D., Ph.D. has served as a member of the Board since March 2014.

13. Individual Defendant Stephen Farr, Ph.D., one of the co-founders of the Company, has served as a member of the Board since 2015 and is the Chief Executive Officer and President of the Company.

14. Individual Defendant Caroline M. Loewy has been a member of the Board since September 2020.

15. Individual Defendant Erle T. Mast has served as a member of the Board since May 2008.

16. Individual Defendant Mary E. Stutts has served as member of the Board since September 2020.

17. Individual Defendant Renee Tannenbaum has served as a member of the Board since February 2015.

18. Individual Defendant Dennelle J. Waynick has served as a member of the Board since September 2020.

19. Individual Defendant Mark Wiggins has served as a member of the Board since May 2011.

20.     Defendant Zogenix is incorporated in Delaware and maintains its principal offices at 5959 Horton Street, Suite 500, Emeryville, CA 94608. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "ZGNX."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

23.     Zogenix, a biopharmaceutical company, develops and commercializes therapies to transform the lives of patients and their families living with rare diseases in the United States. The Company's lead product candidate is the Fintepla, a low-dose fenfluramine, which is in Phase III clinical trials for the treatment of seizures associated with Dravet syndrome, as well as to treat seizures associated with Lennox-Gastaut syndrome; and that is in Phase II clinical trials for the treatment of other rare epileptic syndromes and diseases. It is also developing MT1621, an investigational therapy for the treatment of a rare genetic disorder called thymidine kinase 2 deficiency. Zogenix has a collaboration with Tevard Biosciences for the research, development and commercialization of novel gene therapies for Dravet Syndrome and other genetic epilepsies. The company was formerly known as SJ2 Therapeutics, Inc. and changed its name to Zogenix, Inc. in August 2006. Zogenix was incorporated in 2006 and is headquartered in Emeryville, California.

24.     On January 19, 2022, Zogenix and UCB announced the Proposed Transaction:

> BRUSSELS and EMERYVILLE, Calif., Jan. 19, 2022 /PRNewswire/ -- **Regulated information – Inside information** – UCB (Euronext: UCB) and Zogenix

5

(NASDAQ: ZGNX) announced today that the companies have entered into a definitive agreement under which UCB would acquire Zogenix, Inc., a global biopharmaceutical company commercializing and developing therapies for rare diseases. Under the terms of the agreement, UCB will commence a tender offer to purchase all outstanding shares of Zogenix for a purchase price per share of US$ 26.00 in cash at closing, plus a contingent value right (CVR) for a potential cash payment of US$ 2.00 upon EU approval by December 31, 2023, of FINTEPLA® as an orphan medicine for treatment of Lennox-Gastaut syndrome (LGS). The upfront consideration represents a 72% premium to Zogenix shares based on the 30-day volume weighted average closing stock price of Zogenix prior to signing. The total transaction is valued at up to approximately US$ 1.9 billion / € 1.7 billion.

The board of directors of both companies have unanimously approved the transaction, the closing of which remains subject to the tender of shares representing at least a majority of the total number of Zogenix's outstanding shares, receipt of required antitrust clearances, and other customary conditions.

The transaction will broaden and build upon UCB's role as a leader in, and our continued commitment to, addressing unmet needs of people living with specific or rare forms of epilepsy, in particular, adding FINTEPLA® to UCB's existing product line. FINTEPLA® has been approved by the U.S. Food and Drug Administration (FDA)[1] and the European Medicines Agency (EMA)[2] and is under regulatory review in Japan[3], for the treatment of seizures associated with Dravet syndrome in patients two years of age and older. Zogenix is also pursuing indications for the use of FINTEPLA® in the treatment of seizures associated with additional rare epilepsies, Lennox-Gastaut syndrome (LGS) and CDKL5 Deficiency Disorder (CDD)[4]. Zogenix has submitted a Type II Variation Application to the EMA[5], and the U.S. FDA recently accepted for filing Zogenix's supplemental New Drug Application (sNDA)[6], granting Priority Review, for LGS. Beginning in childhood, Dravet syndrome and Lennox-Gastaut syndrome are two of the most devastating and life-long forms of epilepsy [7,8,9,10].

"The proposed acquisition of Zogenix reinforces UCB's sustainable patient value strategy and continued commitment to addressing unmet needs of people living with epilepsy with an increasing focus on those living with specific or rare forms of epilepsy, where few options exist. Complementing UCB's existing therapeutic offerings, the Zogenix acquisition provides UCB with an approved medicine for a life-threatening, rare infant- and childhood-onset epilepsy marked by frequent and severe treatment-resistant seizures, that are

particularly challenging to treat," said Charl van Zyl, Executive Vice President, Neurology & Head of Europe/International Markets, UCB. "Utilizing our deep expertise, experience and global capabilities, we plan to accelerate access for patients to the treatment. We look forward to welcoming the Zogenix team to UCB, benefiting from their insights and working together to maximize the reach and impact of their medicines for the benefit of as many people as possible."

"We are delighted to announce UCB's proposed acquisition of Zogenix, recognizing the value of our lead medicine, both for the important role it has already begun to play for Dravet patients and their caregivers, and for its potential to help many others in the future," said Stephen J. Farr, PhD, President and Chief Executive Officer of Zogenix. "We are excited for the potential opportunities ahead of us, working together to accelerate our mission and progress to improve the care of patients in need of new therapies. We believe this transaction is in the best interests of both patients and our shareholders."

**Strategic Benefits**

- **Builds on UCB's continued epilepsy ambitions**: Acquisition provides medicine that complements UCB's existing symptomatic treatments, bringing significant and differentiated value to patients suffering from Dravet syndrome and, if approved, from seizures associated with Lennox-Gastaut syndrome and potentially other rare epilepsies.

- **Expands benefits for patients globally**: UCB brings an established global footprint, together with deep research and development, commercial, medical, and regulatory expertise in epilepsy, which will be utilized to rapidly advance and optimize the availability of these new treatments and reach additional patients.

- **Enhances future epilepsy pipeline and strategic priorities in rare/orphan diseases**: Zogenix's pipeline will add to UCB's short-term and long-term epilepsy pipeline, as well as provide critical learnings in rare/orphan disease health ecosystems.

- **Enhances UCB's top-line growth**: FINTEPLA® was launched in the U.S. and Europe in 2020 and has significant potential for usage in other seizure types. It is expected that the proposed acquisition, if completed, will contribute to UCB's revenue growth upon closing and will be accretive to UCB's earnings in 2023.

**Transaction Terms, Approvals and Time to Closing**

Under the terms of the acquisition agreement, UCB, through a wholly-owned subsidiary, Zinc Merger Sub, Inc., will initiate a tender offer to acquire all outstanding shares of Zogenix for a purchase price of US$ 26.00 per share in cash, plus one non-tradeable CVR. The CVR will entitle holders to an additional cash payment of US$ 2.00 per share if a regulatory milestone related to approval of FINTEPLA® for treatment of seizures associated with Lennox-Gastaut syndrome (LGS) is achieved by or before December 31, 2023. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Zogenix's outstanding shares, receipt of required antitrust clearances, and other customary conditions. Upon the successful completion of the tender offer, UCB's acquisition subsidiary will be merged into Zogenix, and any remaining shares of common stock of Zogenix will be cancelled and converted into the right to receive the same consideration per share offered in the tender offer. The transaction is expected to close by the end of the second quarter of 2022. There can be no assurance any payments will be made with respect to the CVR.

**Financing and Guidance**

The acquisition of Zogenix will be financed by a combination of available cash resources and a new term loan. The transaction is not subject to any financing condition. In addition to contributing to UCB's revenue growth after closing, the acquisition of Zogenix is expected to be accretive to UCB's earnings from 2023 onwards.

**Advisors**

Lazard and Barclays are acting as financial advisors to UCB in relation to the transaction. Covington & Burling LLP is acting as legal advisor to UCB on this transaction.

BofA Securities and SVB Leerink are acting as financial advisors to Zogenix on this transaction. Latham & Watkins LLP is acting as legal advisor to Zogenix on this transaction.

\* \* \*

25. It is therefore imperative that Zogenix's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

B.     **The Materially Incomplete and Misleading Solicitation Statement**

26.     On February 1, 2022, Zogenix filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Company Financial Projections*

27.     The Solicitation Statement fails to provide material information concerning financial projections by Zogenix management and relied upon by the financial advisors in their analyses. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company.  Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Zogenix management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Projections prepared by Company management for Zogenix for fiscal years 2022 through 2040, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (a) Adjusted EBIT; and (b) Unlevered Free Cash Flows, but fails to disclose: (i) the line items used to calculate the non-GAAP measures or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning BofA's Financial Analyses*

32. With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Solicitation Statement fails to disclose: (i) the metrics of the companies observed by BofA in the analysis, i.e., the enterprise value and the fiscal year 2025 probability-of-success adjusted revenues for each company; (ii) the basis for using a 10.5% discount rate; and (iii) the closing price per share as of January 18, 2022.

33. With respect to BofA's *Selected Precedent Transaction Analysis*, the Solicitation Statement fails to disclose: (i) the metrics of the transactions observed by BofA in the analysis; (ii) the basis for applying the multiple reference ranges of multiples; (iii) net cash of the Company as of December 31, 2021; and (iv) the number of fully-diluted shares of Company common stock outstanding.

34. With respect to BofA's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the ranges of terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from -30% to -20%; (iii) the NOLs of the Company as of December 31, 2021 and the Company's future losses over the period from calendar year 2021 through calendar year 2023; (iv) the inputs and assumptions underlying the use of discount rates ranging from 9.00% to 12.00%; (v) Zogenix's net cash as of December 31, 2021; (vi) the fully diluted number of Company shares as of December 31, 2021.

35. With respect to BofA's analysis of *Present Value of Wall Street Analysts Price Targets*, the Solicitation Statement fails to disclose the research analysts selected and the corresponding price targets prepared and published by the selected research analysts.

36. With respect to BofA's *Premia Calculations*, the Solicitation Statement fails to disclose the biopharma transactions observed and the premia paid in those transactions.

*Omissions and/or Material Misrepresentations Concerning SVB Leerink's Financial Analyses*

37. With respect to SVB Leerink's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the ranges of terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from -30% to -20%; (iii) the tax savings from usage of the Company's estimated U.S. Federal NOLs; (iv) the inputs and assumptions underlying the use of discount rates ranging from 10.0% to 13.0%; and (v) the fully diluted number of Company shares as of December 31, 2021.

38. With respect to SVB Leerink's *Publicly Traded Company Analysis*, the Solicitation Statement fails to disclose: (i) the metrics of the companies observed by SVB Leerink in the analysis, i.e., the enterprise value and net revenue for each company.

39. With respect to SVB Leerink's *Selected Precedent Transaction Analysis*, the Solicitation Statement fails to disclose: (i) the metrics of the transactions observed by SVB Leerink in the analysis.

40. With respect to SVB Leerink's analysis of one-year forward stock price targets, the Solicitation Statement fails to disclose the research analysts selected and the corresponding price targets prepared and published by the selected research analysts.

41. With respect to SVB Leerink's premia analysis, the Solicitation Statement fails to disclose the 21 transactions observed and the premia paid in those transactions.

42. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender his shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

45. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about

the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

47. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

48. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

49. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

50. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II

**Violations of Section 14(d)(4) of the Exchange Act and
Rule 14d-9 Promulgated Thereunder
(Against All Defendants)**

51. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

52. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

53. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

54. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

55. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

56. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT III**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of Zogenix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Zogenix, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Zogenix, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Zogenix, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

61. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

     C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

     D.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: February 2, 2022                        **MELWANI & CHAN LLP**

                                                      /s *Gloria Kui Melwani*
                                                      Gloria Kui Melwani (GM5661)
                                                      1180 Avenue of the Americas
                                                      New York, New York 10036
                                                      Tel: (212) 382-4620
                                                      Email: gloria@melwanichan.com

                                                      *Attorneys for Plaintiff*